BUCHALTER NEMER
A Professional Corporation
STEVEN BROWER (SBN: 93568)
sbrower@buchalter.com
MICHAEL L. WACHTELL (SBN: 47218)
mwachtell@buchalter.com
RICHARD ORMOND (SBN: 207442)
rormond@buchalter.com
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Fax: (949) 720-0182

Attorneys for Defendant
HAMILTON BREWART INSURANCE AGENCY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>HAMILTON BREWART INSURANCE AGENCY, LLC, et al.,<br><br>Defendants..<br><br>AND RELATED COUNTERCLAIM | Case No. 12-cv-9277 JFW (Ex)<br><br>**DEFENDANT HBIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**<br><br>Date:       April 22, 2013<br>Time:      1:30pm<br>Judge:    Hon. John F. Walter |

Defendant Hamilton Brewart Insurance Agency, LLC ("HBIA"), for itself and itself alone,[1] hereby opposes the Motion for Summary Judgment Or, In The Alternative, For Summary Adjudication, filed by Plaintiff Endurance American Specialty Insurance Company ("Endurance"), as more fully set forth herein.

---

[1] Defendant Derek Brewart is separately represented. The Hamilton Brewart Trust is currently in default (Docket #26). Within the past few days the powers of the receiver were expanded to include the Hamilton Brewart Trust (AUF No. 96). The receiver is currently contemplating, with the advice of counsel, how to proceed in regard to that entity. However, given the default, no response will be provided to this Motion.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANT HBIA'S MEMO IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

12-cv-9277 JFW (Ex)

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................. 1

II.     THE MOTION WAS FILED AND SERVED UNTIMELY .......................... 2

III.    THE COURT SHOULD NOT ENTERTAIN THIS MOTION UNDER THE UNIQUE CALIFORNIA LAW DOCTRINE SET FORTH IN HASKEL/MONTROSE ................................................................. 5

        A.      THIS DIVERSITY CASE, RELATING TO INSURANCE COVERAGE, IS GOVERNED BY CALIFORNIA LAW .................. 5

        B.      ALTHOUGH SOME TRIAL LEVEL COURTS HAVE ERRED, NO CALIFORNIA APPELLATE COURT HAS FAILED TO APPLY THE HASKEL/MONTROSE DOCTRINE WHERE THE ISSUES IN THE COVERAGE CASE OVERLAP WITH THOSE IN THE UNDERLYING CLAIM ...................................... 6

IV.     THE LEGAL STANDARDS APPLICABLE TO RULE 56 MOTIONS ...... 8

V.      ARGUMENTS OPPOSING THE SPECIFIC ITEMS PROPOSED IN THE MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION ................................................................. 9

        A.      ENDURANCE IS NOT ENTITLED TO OBTAIN RESCISSION OF THE 2012 POLICY ................................................ 10

        B.      THE APPLICATION EXCLUSION DOES NOT BAR COVERAGE UNDER THE 2012 POLICY ............................ 15

        C.      THE UNIVERSAL BANK CLAIM IS NOT EXCLUDED BY THE "CLAIMS MADE" NATURE OF THE POLICY .................... 16

        D.      ENDURANCE IS NOT ENTITLED TO RETROACTIVE JUDICIAL CONFIRMATION OF ITS DESIRE TO RESCIND THE 2011 POLICY ................................................ 18

        E.      THE APPLICATION EXCLUSION DOES NOT APPLY TO THE 2011 POLICY ................................................ 19

        F.      THE ASSISTANCE AND COOPERATION CLAUSES DO NOT BAR COVERAGE ................................................ 19

        G.      THE UNIVERSAL BANK ACTION IS NOT BARRED BY THE FORTUITY DOCTRINE OR BY INS. CODE 533 ........................ 22

        H.      RESTITUTION AND DISGORGEMENT ........................ 24

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

i

**DEFENDANT HBIA'S MEMO IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

12-cv-9277 JFW (Ex)

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*
  (9th Cir. 2010) 624 F.3d 1253........................................................2, 3

*Barcamerica Int'l USA Trust v.Tyfield Importers, Inc.,*
  (9th Cir.2002) 289 F.3d 589..........................................................8

*Beeman v. Anthem Prescription Managementl, LLC,*
  (9th Cir. 2012) 689 F.3d 1002........................................................7

*Belz v. Clarendon American Ins.*
  (2007) 158 Cal.App.4th 615...........................................................20

*Burns v. Int'l Ins. Co.,*
  (9th Cir. 1991) 929 F.2d 1422........................................................18

*Cahill v. Liberty Mut. Ins.Co.,*
  (9th Cir. 1996) 80 F.3d 336..........................................................5

*Catlin Underwriting v. San Diego Refrigerated Services*
  (9th Cir. 2012) 469 Fed.Appx. 529...................................................5

*Clemmer* v. *Hartford Insurance Co.*
  (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285 P.2d 1098]........................................24

*Coca Cola Bottling Co. v. Columbia Casualty Ins. Co.*
  (1992) 11 Cal.App.4th 1176..........................................................12

*Davis v. HSBC Bank Nevada*
  (9th Cir. 2012) 691 F.3d. 1152.......................................................5

*Doe v. Life Ins. Co. of N. Am.,*
  (N.D. Cal. 2010) 737 F.Supp.2d 1033.................................................17

*Downey Venture v. LMI Ins. Co*
  (1998) 66 Cal.App.4th 478...........................................................23

*Emp'rs Ins. of Wausau v. Granite State Ins. Co.,*
  (9th Cir.2003) 330 F.3d 1214.........................................................7

*Faust v. The Travelers*
  (9th Cir. 1995) 55 F.3d 471..........................................................21

*Gueyffier v. Ann Summers, Ltd.,*
  (2008) 43 Cal.4th 1179 ..............................................................17

*Haskel, Inc. v. Superior Court*
  (1995) 33 Cal. App. 4th 963........................................................6, 7, 8

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)**

12-cv-9277 JFW (Ex

*Hyundai Motor America v. National Union Fire Ins. Co.*
(9th Cir. 2010) 600 F.3d 1063 ................................................................... 5

*Imperial Casualty & Indemnity Co. v. Sogomonian*
(1988) 198 Cal.App.3d 169 [243 Cal.Rptr. 639] ..................................... 12

*In Re Ahaza Systems*
(9th Cir. 2007) 482 F.3d. 1118 .................................................................. 8

*Insua v. Scottsdale Ins. Co.*
(2002) 104 Cal.App.4th 737 [129 Cal.Rptr.2d 138] ............................... 21

*J. C. Penney Casualty Ins. Co., supra,* v. *M. K, supra,*
(1991) 52 Cal.3d 1009 ........................................................................ 23, 24

*Low v. Golden Eagle*
(2003) 110 Cal.App.4th 1532 ............................................................ 20, 21

*Merced County Mt. Fire Ins. Co.,*
(1991) 233 Cal.App.3d 765 ..................................................................... 12

*Montrose Chemical Corp v. Superior Court*
(1993) 6 Cal.4th 287 ............................................................................... 22

*Montrose Chemical Corp. v. Superior Court (Montrose II)*
(1994) 25 Cal.App.4th 902 .................................................................... 6, 7

*Nationwide Life Ins. Co. v. Richards*
(9th Cir. 2008) 541 F.3d 903 .................................................................. 13

*Nieto v. Blue Shield*
(2010) 181 Cal.App.4th 60 ...................................................................... 12

*Old Line Life Ins. Co. v. Superior Court*
(1991) 229 Cal.App.3d 1600 [281 Cal.Rptr. 15] ............................... 12, 13

*Root v. American Equity Specialty Ins. Co.,*
(2005)130 Cal.App.4th 926 ..................................................................... 17

*Shell Oil Co. v. Winterthur Swiss Ins. Co.,*
(1993) 12 Cal.App.4th 715 ............................................................ 17, 23, 24

*St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau*
(2012) 210 Cal.App.4th 645 .................................................................... 22

*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania*
(2007) 148 Cal.App.4th 1296 [56 Cal.Rptr.3d 491] ............................... 23

*Truck Ins. Exchange v. Unigard Ins. Co.*
(2000) 79 Cal.App.4th 966 ............................................................... 20, 21

*United Enterprises, Inc. v. Superior Court*
(2010) 183 Cal.App.4th 1004 .................................................................... 7

iii

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)**

12-cv-9277 JFW (Ex

*UNUM Life Ins. Co. v. Ward,*
    (1999) 526 U.S. 358, 119 S. Ct. 1380, 143 L. Ed. 2d 462 ...................................17

*West Coast Life Ins. Co. v. Ward*
    (2005) 132 Cal.App.4th 181................................................................13

*West v. AT&T Co.,*
    (1940) 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 .................................6

*Westrec Marina Management, Inc. v. Arrowood Indemnity Co.,*
    (2008) 163 Cal.App.4th 1387...............................................................18

*World Health & Educ. Foundation v. Carolina Cas. Ins. Co.,*
    (N.D. Cal. 2009) 612 F.Supp. 1089 ...............................................17, 18

**Statutes**
California *Insurance Code* § 334.......................................................11, 12

Ins. Code 533 .......................................................................................22, 23

**Other Authorities**
Croskey et al.,
    Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007).............21, 23

**Rules**
California Rule of Court 977(a)................................................................7

FRCP 56(f)..............................................................................................13

FRCP Rule 56(c)......................................................................................8

Local Rule 7-3 .........................................................................................8

iv

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)**

12-cv-9277 JFW (Ex

## I.  INTRODUCTION

Defendant HBIA was, for many years, a major insurance agency/broker in the Inland Empire.  Since October 2012, HBIA has been under the management of a court-appointed receiver, Ted Lanes, who is responsible for winding-up the operations of HBIA for the benefit of the creditors of HBIA.  While it was creditor Universal Bank which requested the appointment of a receiver, the Order appointing the receiver (consistent with California law) makes it clear that the receiver answers to the Los Angeles Superior Court, not to Universal Bank.  (*See* AUF[2] No. 92.)

Counsel in this matter was selected and appointed by the receiver.  Counsel is, therefore, cognizant of the various preliminary reports[3] filed with the Los Angeles Superior Court.  As such, HBIA recognizes that, at trial, a finder of fact, weighing the circumstantial evidence and the disputed facts, might reach some conclusions adverse to HBIA.

However, notwithstanding what might or might not happen at a trial, HBIA contends that the <u>admissible</u> evidence offered by plaintiff Endurance (of which there is relatively little after removing hearsay, improper judicial notice and un-authenticated documents) at this time, in combination with the significant legal deficiencies discussed in this Opposition, means that the MSJ[4] is wholly deficient and must be denied.

Moreover, there are two significant procedural deficiencies pursuant to which this Court should deny the motion, as discussed in the next two sections.

---

[2]  The abbreviation "AUF" will be used to refer to those "Additional Undisputed Facts" appearing in the "Separate Statement of Undisputed Facts and Conclusions of Law."

[3]  As discussed in the Evidentiary Objections, these reports are not under penalty of perjury and they refer to an ongoing investigation

[4]  The abbreviation "MSJ" ("Motion for Summary Judgment") will be used to refer to the pending Motion.  HBIA recognizes that the MSJ also includes a request for Summary Adjudication and will distinguish that technicality where it is essential to the meaning of the argument.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANT HBIA'S MEMO IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

12-cv-9277 JFW (Ex)

## II.   THE MOTION WAS FILED AND SERVED UNTIMELY

The MSJ in this matter was e-filed and e-served by Endurance after 11:00 p.m. on Monday, March 25, 2013, more than seven hours past the deadline. As discussed below, pursuant to the Local Rules for this District that means that the filing was deemed filed and served one day too late for the selected hearing date.

And this was a matter of material prejudice to HBIA because if the hearing date had been set correctly HBIA would have been entitled to an additional week to prepare its Opposition.[5]

Indeed, the Ninth Circuit has advised the District Courts within the Central District of California (as distinguished from every other court in the Circuit) to be particularly heedful of motion deadlines and solicitous of requests for continuance because of its observation, in *Ahanchian v. Xenon Pictures, Inc.* (9th Cir. 2010) 624 F.3d 1253, 1258 that:

> To begin with, [the party opposing the MSJ] faced an exceptionally constrained deadline resulting from the <u>peculiar dictates</u> of the local rules for the Central District of California. [emphasis added]

The Ninth Circuit then explained, in footnote 6 of *Ahanchian*, what it meant by the "peculiar dictate" of the local rules in this District:

> As a result, where a movant chose to file a motion . . . [on] the last day allowed by local rules – the nonmovant has a mere seven days to file an opposition.   This abbreviated timeline is unusual; every other district in this circuit guarantees nonmovants at least fourteen days to file an opposition to a motion.

---

[5]   HBIA did not delay in presenting this issue to the Court.   HBIA filed an *Ex Parte* Application (Docket #82) with this Court requesting a continuance of the hearing on the MSJ (which would have extended the time for Opposition under Local Rule 7-11) on several grounds including, but not limited to, the defect in notice and the size of the filing.   That *Ex Parte* Application was denied (Docket #85).   Notably, Endurance has not filed a Motion under Rule 6(b) seeking relief for the late filing (which relief, HBIA would argue, must be denied).

In this matter, Endurance made a <u>voluntary strategic</u> decision to file the MSJ for a hearing date of April 22, 2013.  In that regard, this Court allows counsel to unilaterally select the hearing date, unless it is a closed date.  And the next "closed" motion date for this Court is not until May 27, 2013.  Nor is there any deadline in the case which would obligate Endurance to file for an early hearing date since the deadline for hearing of dispositive motions isn't until June 17, 2013. (Docket #44)

Pursuant to Local Rules 6 and 7, at least in the Central District, the applicable deadlines[6] for motion related filings are all based on the hearing date selected.  The entire process begins with L.R. 6-1 which specifies in relevant part:

> The notice of motion shall be filed with the Clerk not later than twenty-eight (28) days before the date set for hearing, and shall be served on each of the parties electronically . . . If served personally, or electronically, the notice of motion shall be served not later than twenty-eight (28) days before the Motion Day designated in the notice.

That is, if a party wanted to have a motion heard on April 22, the Local Rules establish a deadline of March 25 for filing and service.  The wording of this deadline is not materially different from the wording of the deadline for filing of the Opposition and the Reply.  See, for example, L.R. 7-9 which provides that:

> Each opposing party shall . . . not later than twenty-one (21) days before the date designated for the hearing of the motion . . . serve upon all other parties and file with the clerk . . .

HBIA's reference to these dates as "deadlines," <u>including the date for filing the motion</u>, is fully accurate.  The Ninth Circuit said in *Ahanchian*, *supra* at footnote 6,

---

[6]   Endurance, in its Opposition (Docket #84) to HBIA's Ex Parte request to continue the hearing on the MSJ, argued that the term "date due" in this Court's Order (Docket #10) does not apply to the filing of the motion itself, because that isn't a "date due."  Of course, since the term "date due" doesn't exist anywhere in the Local Rules it could be argued that this Court's Order doesn't apply to any filing.  But HBIA submits that the interpretation offered by Endurance makes no sense and that the intention of the Court, to wit, that the term "date due" should apply to all deadlines, can be readily discerned, as more fully set forth herein.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

that "the Central District Local Rules establish <u>deadlines for filing motions</u> and oppositions by counting backwards from an established hearing date." [emphasis added]

Having established that March 25, 2013 was the "deadline" for filing and service of the MSJ, the question is whether this Court's Order (Docket #10) applies. Section 3(b) states:

> All documents that are required to be filed in an electronic format pursuant to the General Order Authorizing Electronic Filing <u>shall be filed electronically no later than 4:00 p.m. on the date due</u> unless otherwise ordered by the Court. Any documents filed electronically after 4:00 p.m. on the date due <u>will be considered late</u> and may be stricken by the Court. . . [emphasis added]

There is no genuine dispute about the applicability of electronic filing to this case (LR 5-4.1). And the Local Rules, which are the source of the deadline (28 days before the selected hearing date) are also the source of the time when such motion must be filed and served. LR 5-4.6.1 provides that:

> <u>Unless otherwise provided by order of the assigned judge</u>, all electronic transmissions of documents must be completed prior to midnight . . . in order to be considered timely filed on that day. [emphasis added]

Here, the assigned judge (this Court) <u>has</u> otherwise provided, and has stated that the deadline is 4:00pm, not <u>more than seven hours</u>[7] later.

HBIA would suggest that the correct remedy is for the court to deny this motion, without prejudice to Endurance's right to file a motion in a manner consistent with all the applicable legal requirements, including the Local Rules.

---

[7] It might be argued by Endurance that most people don't do work after 4:00 p.m. so that the violation of this Court's Order is harmless. First, unfortunately that is an untrue assumption for both judges and attorneys. Second, if that argument were to be accepted, it could be asserted that any filing before 8:00 a.m. the day after the date due is sufficient.

### III. THE COURT SHOULD NOT ENTERTAIN THIS MOTION UNDER THE UNIQUE CALIFORNIA LAW DOCTRINE SET FORTH IN HASKEL/MONTROSE

California law, which is controlling in this matter, recognizes a unique doctrine, applicable to disputes between insurance companies (such as plaintiff Endurance) and their insureds (such as defendant HBIA).

Pursuant to that doctrine a court should not entertain a motion which seeks judicial determinations, specifically such as summary judgment or summary adjudication of issues, which could harm the interests of the insured in relation to the underlying claims.

HBIA assumes that Endurance may attempt to seize upon the words "stay" and "declaratory judgment."  However, as shown below, neither of those terms is applied in the literal sense by the California appellate courts, whose decisions are controlling here.

### A. THIS DIVERSITY CASE, RELATING TO INSURANCE COVERAGE, IS GOVERNED BY CALIFORNIA LAW

Subject matter jurisdiction in this case is based solely upon diversity jurisdiction.  (Request for Judicial Notice, Ex. 35 (First Amended Complaint).

Accordingly, in this matter, California law must be applied to the state law claims.  See, for example, *Catlin Underwriting v. San Diego Refrigerated Services* (9th Cir. 2012) 469 Fed.Appx. 529, 530 where the court stated:

California law governs this insurance policy dispute brought in a diversity action.  *Hyundai Motor America v. National Union Fire Ins. Co.* (9th Cir. 2010) 600 F.3d 1063, 1066.

and *Davis v. HSBC Bank Nevada* (9th Cir. 2012) 691 F.3d. 1152, 1159 where the court stated:

As we sit in diversity, California law governs our analysis of the state law claims. *See, e.g., Cahill v. Liberty Mut. Ins.Co.* (9th Cir. 1996) 80 F.3d 336, 338.

5

While only the Federal appellate courts can reverse a decision of this Court, in a diversity matter, where the relevant state courts have spoken unambiguously, those authorities are generally controlling.  For example, the U.S. Supreme Court has noted that if "an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT&T Co.* (1940) 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 .

## B.   ALTHOUGH SOME TRIAL LEVEL COURTS HAVE ERRED, NO CALIFORNIA APPELLATE COURT HAS FAILED TO APPLY THE HASKEL/MONTROSE DOCTRINE WHERE THE ISSUES IN THE COVERAGE CASE OVERLAP WITH THOSE IN THE UNDERLYING CLAIM

California law has a doctrine which protects insureds, even those insureds who might not otherwise be entitled to coverage, from being judicially attacked by their own insurer concurrently with the underlying claims which the insurer is seeking not to cover.

HBIA would contend that the seminal decisions are *Montrose Chemical Corp. v. Superior Court (Montrose II)* (1994) 25 Cal.App.4th 902, 910 and *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 979.

The right to a stay, as set forth in *Haskel* and *Montrose,* is predicated on three separate policy considerations (the "*Haskel* and *Montrose* doctrine") that must be examined: (1) "the insurer, which is supposed to be on the side of its insured and with which it has a special relationship, would be permitted to effectively attack its insured, indirectly providing assistance to the underlying claimant"; (2) "allowing such a declaratory relief action to proceed would require the insured to expend resources to fight a two-front war, one with the underlying claimant and one with its insurer, thus undercutting a primary reason for purchasing liability insurance in the first instance"; and (3) "if the declaratory relief action proceeded to trial before the underlying action, the insured might be collaterally estopped to contest issues

6

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

relating to its liability in the underlying action." *Advanced Marketing Services v. Superior Court ("AMS")*[8] No. D046866, 2005 WL 3491023 citing *Haskel, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 963, 979 and *Montrose Chemical Corp. v. Superior Court (Montrose II)* (1994) 25 Cal.App.4th 902, 910.

Efforts by California trial courts to avoid the Haskel/Montrose doctrine have been held to be an abuse of discretion.  In *United Enterprises, Inc. v. Superior Court* (4th Dist, Div. One, 2010) 183 Cal.App.4th 1004 the California Court of Appeal was faced with a Writ of Mandate after the trial court attempted to craft an "alternative" to  a stay in an insurance coverage matter.  The Court said at 1012:

> In this case, the court misread *Montrose I* and denied United's request for a stay of the declaratory relief action, even though it found that Royal's motion was "putting the insured in a position where they will have to try to prove some of the things they are actually trying to defend themselves from." We agree with United that the factual issues raised by facts numbered 16, 17, 18 and 19 of Royal's separate statement of undisputed facts overlap the cited allegations of the underlying actions. We therefore conclude that the court erred in denying United's request for a stay, and that the error constitutes an abuse of discretion justifying relief.

An even more helpful explanation of the correct application of California law can be found in *AMS, supra*.  In that matter the insured sued the insurer for bad faith and the insurer's counter-claims included a claim for rescission.  Further, the

---

[8]     AMS is an unpublished decision of the California Court of Appeal. However, the Ninth Circuit has recently stated, *en banc*, that citation to unpublished California decisions is proper in these circumstances. See *Beeman v. Anthem Prescription Management, LLC* (9th Cir. 2012) 689 F.3d 1002 (as amended 7-10-12) where the court, sitting *en banc,* said in footnote 2, "[a]lthough they are not precedent under California Rule of Court 977(a), **we may nonetheless rely on the unpublished opinions** in *A.A.M.* and *Bradley* **to 'lend support' to the contention that** ***ARP Pharmacy*** **'accurately represents California law.'** *Emp'rs Ins. of Wausau v. Granite State Ins. Co.* (9th Cir. 2003) 330 F.3d 1214, 1220 n. 8."

7

insured did <u>not</u> file a motion to stay the case.  The insurer's efforts to argue that the circumstances were different were unavailing.

As demonstrated by *Haskel* and *AMS,* neither of which involved a motion seeking a stay of the entire action, the principles underlying the doctrine do not require the technicality of filing a motion to stay the case[9] before asking the court to defer otherwise inappropriate action.  Nor is there any support in the California Court of Appeal decisions for Endurance's suggestion that a decision to wait and bring a motion for stay later in the case can cause the loss of that substantive right.

## IV.   THE LEGAL STANDARDS APPLICABLE TO RULE 56 MOTIONS

The Court's Order (Docket #44) indicates that counsel should accept that the court is familiar with the principles of Rule 56 and the *Celotex* doctrine.  HBIA hereby accepts the court's invitation to avoid restatement of such principles, subject to the understanding that HBIA does not waive the right to make any proper argument, here or on appeal.

HBIA does note that, under FRCP Rule 56(c), it is Endurance, as the moving party, which has the burden of coming forward with competent evidence to support its proposed "Undisputed Facts" ("UF").  See, for example, *In Re Ahaza Systems* (9th Cir. 2007) 482 F.3d. 1118, where the court said, at footnote 1:

> Stratos has not, however, presented evidence supporting this allegation, and Wood has not so admitted or alleged.  We therefore <u>do not accept it as an undisputed fact</u> on summary judgment.  *See generally Barcamerica Int'l USA Trust v.Tyfield Importers, Inc.* (9th Cir. 2002) 289 F.3d 589, 593 n. 4  ("[A]rguments and statements of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment." (internal quotation omitted)) [emphasis added]

---

[9]   HBIA has, concurrent with the filing of this Opposition, filed a Motion to Stay with this Court.  That motion is set for hearing just one week after this motion, the first allowable date under Local Rule 7-3.

As more fully set forth in the Evidentiary Objections filed by HBIA, a substantial portion of the key "Undisputed Facts", offered by Endurance, are not supported by any competent evidence and are, therefore, nothing more than arguments by counsel.

## V.    ARGUMENTS OPPOSING THE SPECIFIC ITEMS PROPOSED IN THE MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION

Endurance makes eight separate requests for summary judgment or summary adjudication (Memorandum in Support, Section III, subsections A-H).  In the interest of simplifying the process of tracking arguments both for counsel, and for the Court, HBIA will respond to each of the arguments raised by Endurance in the same order.

There is one predicate factual issue which runs through many of these arguments, which is the alleged "Premium Financing Fraud."

First, HBIA contends that Endurance has not presented competent evidence of the existence of the Premium Financing Fraud, for all the reasons stated in the Evidentiary Objections.  Most of the "evidence" offered consists of reports of the receiver filed with the Los Angeles Superior Court.  But those documents are interim reports regarding an ongoing investigation, they are not under penalty of perjury, they are hearsay and the contents are not subject to judicial notice, among other objections.  In other words, HBIA contends that they are not evidence for the purposes of this MSJ.  HBIA respectfully submits that the Court should begin by ruling upon the Evidentiary Objections and determine whether there is any competent evidence supporting the existence and/or dates on which various acts were taken as party of the alleged "Premium Financing Fraud," for the purposes of this MSJ.

Second, HBIA would note that the only party which is alleged to have been harmed by the alleged Premium Financing Fraud was Universal Bank, not any customer of HBIA (and no evidence has been submitted by Endurance that any

9

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

1   claim has been made, on behalf of any customer of HBIA, related to the Universal

2   Bank claim.)   This is particularly relevant to HBIA's responses to the Claims

3   Experience questions in the renewal applications which, as discussed below, focus

4   on the customer aspects of the business, <u>not</u> on the financing of the business.

5       For the purposes of this Memorandum, from this point forward HBIA will

6   simply refer to the "alleged Premium Financing Fraud" as a means of reminding the

7   Court of its contention that such item does not actually have evidentiary support, at

8   least for the purpose of this MSJ.

9   **A.    ENDURANCE IS NOT ENTITLED TO OBTAIN RESCISSION**

10  **OF THE 2012 POLICY**

11      Endurance argues that it is entitled to rescission of the 2012 policy based on

12  the alleged failure of HBIA, in responding to the Application, to provide

13  information about the alleged Premium Financing Fraud.

14      But the arguments by Endurance fail on several important grounds.

15      First, Endurance refers to five "Claims Experience" questions, but never says

16  which of those questions, if any, was answered inaccurately.  That is because, even

17  assuming *arguendo* that the alleged "Premium Financing Fraud" did exist, <u>none</u> of

18  the "Claims Experience" questions was answered incorrectly.

19      A review of the actual Claims Experience questions on the actual application

20  shows that the questions asked about <u>actual</u> claims, suits or proceedings (Questions

21  13 and 14), about <u>actual</u> disciplinary actions (Question 15), about <u>actual</u> disputes

22  over fees (Question 16) and about errors and omissions in work performed by the

23  Applicant (Question 17).

24      Further, the questions which asked about claims and errors (13, 14 & 17) all

25  ended with the following phrase, underlined and bold face in the original: "**<u>which</u>**

26  **<u>have not been previously reported to the Insurer.</u>**"  It was reasonable for anyone

27  completing such an application to believe that when the application asked, for

28  example, about "claims, suits or proceedings . . . during the past 12 months" it was

10

requesting such items only if they might be relevant to this Errors & Omissions policy.  So if, for example, an insured had been sued for an automobile accident, it would not have been "previously reported to the Insurer" and it would not be the type of claim for which a response is required on the Application.

HBIA agrees with the legal proposition that questions, which appear on an Application, are presumed to be relevant and potentially material to the underwriting decision.  But here, for strategic business reasons which are best known to Endurance, Endurance's application:

- did <u>not</u> ask whether there were accounting problems at the proposed insured;

- did <u>not</u> ask whether the proposed insured was profitable or was experiencing financial problems;

- did <u>not</u> ask whether the insured had potential disputes with its banks or other financing sources.

There is a further problem with Endurance's request.  It is not enough to complain that an answer to a question is inaccurate – the insurer must also prove exactly what would have been different if it had obtained the correct information prior to issuance of the policy.

HBIA contends that Endurance has a failure of proof on this crucial element.

The critical issue in requesting rescission of an insurance policy is whether or not the misrepresentation upon which the rescission will be based is material or immaterial.  The standard for determining materiality is contained in California *Insurance Code* section 334 which provides that:

Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.

11

This means that a determination of materiality is a *subjective test*.  In *Coca Cola Bottling Co. v. Columbia Casualty Ins. Co.* (1992) 11 Cal.App.4th 1176, 1889, the court stated at fn. 4 that:

> The result we reach is entirely consistent with the holdings in *Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 180-181 [243 Cal.Rptr. 639] and *Old Line Life Ins. Co. v. Superior Court* (1991) 229 Cal.App.3d 1600, 1604-1605 [281 Cal.Rptr. 15].  Those cases hold, and we agree, that the materiality of a misrepresentation in an insurance application is to be judged on a subjective basis from the perspective of the insurer and that false statements on an application will permit rescission of an insurance contract even if, later, the insured believes his false statement is unrelated to the particular risk which gave rise to his claim.  (See  Ins. Code, § 334.).  [Emphasis added]

To rescind a policy of insurance, the request must be, "supported by the nature of the insurance coverage which defendants sought, the quality and quantity of the information which was not disclosed and . . . [the] specifically requested the information on [the insurer's] application and thereafter relied upon in issuing the policy."  *Imperial & Cas. & Indem. Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 182.  This could include an insurer's underwriting guidelines.  *Nieto v. Blue Shield* (2010) 181 Cal.App.4th 60, 75.  But Endurance has not provided any underwriting guidelines, their 30(b)(6) witness has testified that he doesn't know about any guidelines, and the actual underwriters (Sokal and Amman) have not referred to any underwriting guidelines.

Unlike what Endurance contends here, "a simple incorrect answer on an insurance application will not give rise to a defense of fraud, where the true facts, if known, would not have made the contract less desirable to the insurer."  *Merced County Mt. Fire Ins. Co*. (1991) 233 Cal.App.3d 765, 773.  In fact, in a case cited

12

by Plaintiff, *West Coast Life Ins. Co. v. Ward* (2005) 132 Cal.App.4th 181, 187, citing to *Old Line Life Ins. Co. v. Sup. Ct.* (1991) 229 Cal.App.3d 1600, 1603-1604, it was held in pertinent part that, "Other cases, however, inquire into the nature of the information withheld, <u>and the likely practice of **the insurance company**</u> had the concealed facts been truthfully disclosed . . .' [Citations.]." [emphasis added]

Here, Endurance has not submitted any underwriting guidelines or provided any foundation to establish how the information provided supports a rescission. Endurance has provided only conclusory allegations from the two underwriters (Sokal and Amman)[10] saying what <u>they</u> might have <u>personally</u> done, without any reference to company standards, precedent on other insureds, or any other non-conclusory information. The request by HBIA to obtain actual relevant information, pursuant to FRCP 56(f), should, at a minimum, result in a continuance of this motion until the time that the Court can be presented with relevant evidence.

Endurance, possibly recognizing that it lacks any direct evidence to support its claims, asserts that an adverse inference should be drawn with respect to Derek Brewart's invocation of the Fifth Amendment at his deposition. However, this does not assist Plaintiff because:

> The inference may not be drawn 'unless this is a substantial need for the information and there is not another less burdensome way of obtaining that information.' (citation omitted) . . . Moreover, the inference may be drawn only when there is independent evidence of the fact about which the party refuses to testify.

*Nationwide Life Ins. Co. v. Richards* (9th Cir. 2008) 541 F.3d 903, 912. In other words, the mere fact that a question is asked, and that a Fifth Amendment privilege is asserted, does not equal an affirmative answer to the question.

---

[10] Pursuant to FRCP 56(f), HBIA has requested that the Court continue this MSJ to allow HBIA to depose those two employees of Endurance, whose testimony varies materially from the 30(b)(6) testimony previously provided by Endurance. HBIA will also request the right to cross-examine these witnesses at the time of the hearing on this MSJ.

Endurance also refers to the "Tantod" action as though it is potentially significant (MSJ Exhibit 22).  But, as reflected on the face of that Complaint, it relates to nothing more than an ordinary business loan from Golden Empire Capital Corp., purportedly secured by a life insurance policy on Hamilton Brewart (Exhibit 22, page 549).  It has no reference to the alleged Premium Financing Fraud.  And there is NO question on the Application relating to this type of suit.  It was never tendered to Endurance for coverage and it was dismissed shortly after it was filed. (AUF No. 91).  And even Endurance's own underwriter says that the only change she would have made, even if she had known about the Tantod action, was "I would have issued the Policy on different terms, which would have included an endorsement excluding the Undisclosed Tantod Action and other related claims from coverage."[11]   (Sokal Decl., ¶ 7).  But, since the Tantod action was never reported to Endurance as a claim, and since it has been dismissed, there is no materiality to the issuance of the 2012 policy.

Finally, Endurance argues that there was a duty to "update" Endurance regarding the information provided in the Application.  But this begs the same question.  <u>Which</u> question in the Application does Endurance claim required an "update" from Derek Brewart?  The non-evidence submitted by Endurance shows that there were ongoing discussions between Universal Bank and Derek Brewart about the possibility of repaying the money borrowed from Universal Bank by selling HBIA.  While those alleged settlement efforts were not successful, that type of negotiations would be much more typical of a struggling borrower than of any fraudulent scheme.

---

[11]   HBIA anticipates that, at her deposition, Ms. Sokal will testify that, as an underwriter, it is not her responsibility to determine whether a suit is covered under an Endurance policy.  Therefore, she would have taken similar action if HBIA had disclosed a suit for an automobile accident, even though that type of claim is also not covered under the Endurance policy at issue here.  In other words, the fact that she might have added an endorsement excluding coverage for a suit which was irrelevant to the policy does not constitute materiality.

14

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

## B.   THE APPLICATION EXCLUSION DOES NOT BAR COVERAGE UNDER THE 2012 POLICY

Endurance's argument regarding the "Application Exclusion" has many of the same defects as its argument about rescission.

Specifically, Endurance does not specifically identify what information, required by the Application, was not disclosed.  In fact, between the lines in the rescission argument, Endurance implies that HBIA should have surmised that the alleged Premium Financing Fraud is something which Endurance would have wanted to know about, even though the Application didn't specifically request that type of information.

But the "Application Exclusion," by its own terms, is much more limited.  The text of the "Application Exclusion," found at UF No. 66, limits that exclusion to ". . . required to be disclosed in response to Questions 13, 14, 15, 16 and/or 17 . . ."  So it is essential to show evidence that a specific question was not answered correctly, and to further demonstrate the materiality to Endurance (not just the personal opinion of an individual underwriter).

Endurance cites, as authority for the proposition that its Application is unambiguous, an unpublished Order issued by Judge Dale Fisher in *Endurance American Specialty Insurance Company v. AFA Financial Group*, 11-cv-1073 (Docket #248, 9/8/11).  First, the Court there identified a specific question (#9) to which it felt an incorrect answer had been provided.  Second, it was clearly a different application because question #9, in the HBIA application, isn't at issue in the Application Exclusion.  Finally, there is some doubt about the efficacy of the precedent because, by Order dated February 20, 2013, the Ninth Circuit rejected the Motion for Summary Affirmance filed by Endurance American stating "because the arguments raised in the opening brief are sufficiently substantial to warrant further consideration by a merits panel." (AUF No. 94.)

Buchalter Nemer
A Professional Corporation
Irvine

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

Moreover, the Universal Bank lawsuit (which meets the definition of "claim" under the 2011 and 2012 Policy) was actually known to Endurance almost simultaneous with its filing, because it was submitted directly to Endurance by Universal Bank (UF No. 16).  Endurance does not contend that HBIA knew about the Universal Bank suit before the time when Endurance had actual knowledge.  Indeed, the facts submitted by Endurance would support the conclusion that Endurance learned about the suit even before HBIA.

As set forth in the FRCP Rule 56(f) declaration, filed concurrently, HBIA wishes to obtain discovery from the underwriters (Sokal and Amman) showing that HBIA's responses to the Application were proper under the circumstances known at that time and showing that there were no standards at Endurance which would have resulted in any change in the issuance of the policies to HBIA.

## C.   THE UNIVERSAL BANK CLAIM IS NOT EXCLUDED BY THE "CLAIMS MADE" NATURE OF THE POLICY

Endurance's argument fails for several reasons.

Most importantly, even assuming *arguendo* that Endurance had admissible and competent evidence to support UF Nos. 46-48 (which it does not), the alleged discussions do not meet the definition of a "claim" under the Endurance policy.  UF No. 42 correctly indicates that the Policies define "Claim" to mean "a demand received by the Insured for money or services alleging a Wrongful Act. . ."  And UF No. 43 correctly indicates that the Policies define "Wrongful Act" to be "any actual or alleged act, error or omission committed or attempted solely in the performance of or failure to perform Professional Services by an insured . . .."

Endurance does not argue, and certainly does not admit, that in July, 2011 there was a "demand" from Universal Bank for money tied to a covered Wrongful Act.  While there are allegations (not evidence) that certain conversations occurred between Derek Brewart and representatives of Universal Bank, HBIA would argue

1  that those were not specific enough to constitute a "claim" under the definition in
2  the policy.

3      Further, Endurance itself has taken contrary legal positions in this matter.
4  The Complaint in this matter sought rescission only of the 2012 Policy based on
5  Endurance's contention that the claim was made and notice was given during the
6  2012 Policy. (AUF No. 95).

7      Endurance's argument that *Root v. American Equity Specialty Ins. Co.* (Cal.
8  2005) 130 Cal.App.4th 926  has been narrowed and therefore does not weigh in
9  favor of denying its motion fails.  As confirmed by the California Supreme Court
10  and subsequent district court decisions, *Root* stands for the general proposition that
11  "California law allows for equitable excusal of contractual conditions causing
12  forfeiture in certain circumstances, including circumstances making performance
13  futile." *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1186  (citing in part
14  *Root v. American Equity Specialty Ins. Co.* (2005) 130 Cal.App.4th 926, 939).  In
15  *Doe v. Life Ins. Co. of N. Am.* (N.D. Cal. 2010) 737 F.Supp.2d 1033, 1043 , the
16  district court recognized the import and breadth of *Root* and that "[l]ack of timely
17  notice is a defense to coverage only if the insurer can prove substantial prejudice
18  from the delay." *Id*. at 1043 (citing *UNUM Life Ins. Co. v. Ward* (1999) 526 U.S.
19  358, 366, 119 S. Ct. 1380, 143 L. Ed. 2d 462 ).  In addition, courts interpreting
20  Root have recognized that the insurer has the burden to show that it has been
21  prejudiced by the delay.  *Id*., citing *Root*, 130 Cal.App.4th at 947).  Further,
22  "[p]rejudice is hard to show under the rule" and "[t]here is no presumption or
23  inference of prejudice based on evidence of delayed notice alone." *Id*.  Instead,
24  "[t]he insurer must show actual prejudice, not the mere possibility of prejudice." *Id*.
25  (citing *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 761 ).

26      Endurance's reliance on *World Health & Educ. Foundation v. Carolina Cas.*
27  *Ins. Co.* (N.D. Cal. 2009) 612 F.Supp. 1089  and unpublished decisions *Ill. Union*
28  *Ins. Co. v. Brookstreet Secs. Corp.*, No. SACV07-01095 CJC(RNBx) (C.D. Cal.

17

Nov. 20, 2009) 2009 U.S. Dist. LEXIS 130101, *23 and *Vision Quest Indus. v. Travelers* (C.D. Cal. Mar. 25, 2008) No. SACV07-512 JVS(ANx), 2008 U.S. Dist. LEXIS, *11-13 is misplaced.  The district court in *Illinois Union* merely stated that a claim made far outside the Policy Period was not subject to the Equitable Excuse Rule, which is not the case here.  In *World Health* and *Vision Quest*, unlike in the present case, the district courts simply found that the insured failed to present facts supporting application of the Equitable Excuse Rule.

Similarly, Endurance's reliance upon *Burns v. Int'l Ins. Co*. (9th Cir. 1991) 929 F.2d 1422, 1424 and *Westrec Marina Management, Inc. v. Arrowood Indemnity Co*. (2008) 163 Cal.App.4th 1387  are misplaced.  *Burns* was decided 14 years before *Root* and therefore is distinguishable from the present case.  In *Westrec*, unlike in the present case, the insurance company was not notified regarding the claim until 30 days after the expiration of the policy.  Here, unlike in *Westrec*, Endurance was made aware of the claim before the policy expired when it received a letter from Universal Bank, and a second time, again during the policy period, in a letter from counsel for Derek Brewart.

### D.   ENDURANCE IS NOT ENTITLED TO RETROACTIVE JUDICIAL CONFIRMATION OF ITS DESIRE TO RESCIND THE 2011 POLICY

HBIA's argument here incorporates what has previously been stated in Section V.A. of this Memorandum, because the arguments regarding the right to rescind the 2012 policy is very similar to those regarding the right to rescind the 2011 policy, with a few exceptions.

First, Endurance does <u>not</u> argue that any "claim" had been made prior to the issuance of the 2011 policy.

Second, Endurance makes a material argument of counsel without any support in the evidence or even in the UF.  At page 17, lines 23-25 Endurance argues that "Had Endurance known at the time that HBIA was generating additional revenue through the [alleged] Premium Financing Fraud, it never would have

18

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

agreed to issue the 2011 Policy."  But even the self-serving declarations of the Endurance underwriters (Amman and Sokal) <u>make no reference</u> to the effect which "generating additional revenue" might have had on the materiality of such hypothetical disclosures.

In fact, Endurance offers no evidence that the alleged Premium Financing Fraud was even generating "additional revenue."  Without waiver of HBIA's objections to the "evidence," the unauthenticated hearsay information which Endurance cites (Memo in Support, page 17, lines 22-23) actually says "we have never had any accurate balance sheet because all the loan money (liabilities) was not shown in our Balance Sheet . . ."  How did counsel convert "loan money (liabilities)" into "additional revenue"?  And where in the application does Endurance claim that it requested the know the amount of loans taken by a proposed insured?

### E.  THE APPLICATION EXCLUSION DOES NOT APPLY TO THE 2011 POLICY

For all the reasons stated in section V.B., above, the Application Exclusion does not serve to bar any coverage under the 2011 Policy.

### F.  THE ASSISTANCE AND COOPERATION CLAUSES DO NOT BAR COVERAGE

Endurance attempts to make an argument using "and/or" without focusing on the actual evidence, to the extent any exists.

Endurance argues that because Derek Brewart had meetings with one of his lenders, Universal Bank, and "admitted" that he had an obligation to repay the proceeds to loans, that this was somehow a violation of the policy conditions on cooperation.  Such an interpretation of the requirements of an insurance clause would mean that no business could ever have a conversation with any lender, and particularly with any allegedly injured party, without being found in violation of the cooperation clause.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

1    The policy attempts to say that the insurer won't be liable for settlements
2   which are negotiated and consummated by insureds without allowing the insurer to
3   participate.  But the circumstances here, assuming *arguendo* that there is any actual
4   evidence presented, do <u>not</u> include any allegation that HBIA actually consummated
5   a settlement or admitted liability in a manner which has limited the ability of
6   Endurance to defend the insured.

7    Indeed, as admitted by Endurance from the outset, Endurance has refused to
8   defend and indemnify HBIA, claiming that it is excused from such obligation as a
9   result of its "rescission" of the 2012 Policy.  In fact, when presented with claims
10  which are <u>not</u> related to the alleged Premium Financing Fraud, or to Universal
11  Bank, or to any purported violation of the Assistance and Cooperation Clause,
12  Endurance (through counsel) has refused to provide any coverage on the grounds
13  that the policy has been rescinded, so that all other coverage obligations are
14  excused.  (AUF No. 90.)

15   Endurance argues that under *Low v. Golden Eagle* (2003) 110 Cal.App.4th
16  1532 the court did not require a showing of prejudice.  But the unique posture of
17  that case, and its inapplicability here, was explained by the California Court of
18  Appeal in *Belz v. Clarendon American Ins.* (2007) 158 Cal.App.4th 615 where the
19  appellate court, citing its own previous opinion in *Truck Ins. Exchange v. Unigard*
20  *Ins. Co.* (2000) 79 Cal.App.4th 966 said at 627-28:

21       "The Court of Appeal went on to explain that, unlike a notice
22       provision or a cooperation clause, a no-voluntary-payment provision
23       can be enforced without a showing of prejudice: `"[T]he existence or
24       absence of prejudice to [the insurer] is simply irrelevant to [its] duty to
25       indemnify costs incurred *before* notice. The policy plainly provides
26       that notice is a *condition precedent* to the insured's right to be
27       indemnified; a fortiori the right to be indemnified cannot relate back to
28       payments made or obligations incurred before notice."`" (*Truck Ins.*

20

*Exchange v. UnigardIns. Co., supra*, 79 Cal.App.4th at pp. 975-977, citations omitted; accord, *Insua v. Scottsdale Ins. Co.* (2002) 104 Cal.App.4th 737, 746[129 Cal.Rptr.2d 138] [insurer must show prejudice where insured breaches notice provision or cooperation clause but not where insured makes voluntary payment]; *Faust v. The Travelers* (9th Cir. 1995) 55 F.3d 471, 472-73 [California courts consistently enforce no-voluntary-payment provision in absence of prejudice, but prejudice is necessary to enforce notice provision or cooperation clause]; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007) ¶¶ 7:407 to 7:417, pp. 7A-133 to 7A-135 [notice provision]; *id.*, ¶¶ 7:419 to 7:425.15, pp. 7A-135 to 7A-137 [cooperation clause]; *id.*, ¶¶ 7:439.5 to 7:439.10, pp. 7A-140 to 7A-142 [no-voluntary-payment provision].)

Most cases applying a no-voluntary-payment provision have involved *pre-tender* payments by the insured. (See *Truck Ins. Exchange v. UnigardIns. Co., supra*, 79 Cal.App.4th at pp. 976-977.) In one case, however, the court dispensed with a showing of prejudice for *post tender* payments, reasoning that the prohibition on voluntary payments is based on an insurer's *lack of consent*, which can also occur *after* acceptance of tender and while the insurer is providing a defense. (See *Low v. GoldenEagle Ins. Co.* (2003) 110 Cal.App.4th 1532, 1544-1547 [2 Cal.Rptr.3d 761].)

Endurance does not claims (because it cannot) that HBIA made any voluntary payment to Universal Bank, the only aspect where prejudice is not required under controlling California law.  Here, absent an allegation and proof of prejudice to Endurance, even if it were true that the insured had improperly had a conversation which could be construed as admitting liability, in the absence of an Undisputed Fact showing prejudice, Endurance cannot prevail.  And Endurance has not

21

submitted any competent evidence demonstrating such prejudice, especially where it has been the position of Endurance that it will not defend its insured, HBIA.

### G.    THE UNIVERSAL BANK ACTION IS NOT BARRED BY THE FORTUITY DOCTRINE OR BY INS. CODE 533

The arguments presented in this section presuppose that Endurance is discussing the scope of its duty to pay for the defense of HBIA in the Universal Bank matter, an action where it has never agreed to fulfill that obligation.  Further, it attempts to ignore the actual means by which such a determination is made.

Endurance, apparently conceding that there is doubt about the applicability of various policy exclusions, seeks to create a "fortuity doctrine" by pinning together various authorities having nothing to do with insurance, along with cases that discuss general principles of insurance, but without citing a case that actually reaches the result they suggest on the type of evidence being presented to this court.

The California Supreme Court has stated, in *Montrose Chemical Corp v. Superior Court* (1993) 6 Cal.4th 287, 295 that "the existence of a duty to defend turns not upon the ultimate adjudication of coverage . . . <u>but upon the facts known by the insurer at the inception</u> of a third party lawsuit."  [emphasis added]  So the issue is not what Endurance claims to know now, but what Endurance claims to have known when it received the Universal Bank suit.

And the determination of coverage is expressly <u>not</u> based upon a summary of the "heart" of the lawsuit.  The Universal Bank suit includes claims for negligence. The Court of Appeal summarized California law in *St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau* (2012) 210 Cal.App.4th 645, 655:

> "'It is settled that where an insurer has a duty to defend, the obligation generally applies to *the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered by the policy.* [Citations.]' [Citation.]"
> (*Transcontinental Ins. Co. v. Insurance Co. of the State of*

22

1  *Pennsylvania* (2007) 148 Cal.App.4th 1296, 1303[56 Cal.Rptr.3d 491],

2  italics added; accord, Croskey, supra, ¶ 7:629, p. 7B-41 (rev. # 1,

3  2010).) <u>This is so even where only a single claim is potentially covered</u>

4  <u>by the policy, and where noncovered claims predominate</u>. (Croskey,

5  *supra*, ¶¶ 7:629 to 7:630.1, p. 7B-41 (rev. # 1, 2010).) [emphasis

6  added]

7    Also, it has been held, under California law, that even where Insurance Code

8  section 533 might bar the obligation of an insurer to indemnify the insured, that

9  does not mean that the insurer is not obligated to pay for the costs of defense, at

10  least where the policy separates a duty to pay for defense from the duty to

11  indemnify. (*Downey Venture v. LMI Ins. Co* (1998) 66 Cal.App.4th 478, 506-07).

12    Finally, HBIA would submit that Endurance has not made the necessary

13  showing to prevail on this item even assuming that the alleged Premium Financing

14  Fraud has been shown. The California courts have held that the term "willful act"

15  under 533 has a specific meaning. In *Downey, supra*, at 500-501 the court said:

16    A "willful act" under section 533 will include either "an act

17  deliberately done for the *express purpose* of causing damage or

18  intentionally performed *with knowledge* that damage is highly

19  probable or *substantially certain* to result." *(Shell Oil Co.* v.

20  *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 742 [15

21  Cal.Rptr.2d 815], italics added.) It also appears that a wilful act

22  includes an intentional and wrongful act in which ". . . the harm is

23  inherent in the act itself." *(J. C. Penney Casualty Ins. Co., supra,* v. *M.*

24  *K* (1991) 52 Cal.3d 1009, 1025.) In an earlier case, the Supreme Court

25  had said that ". . . even an act which is `intentional' or `willful' within

26  the meaning of traditional tort principles will not exonerate the insurer

27  from liability . . . unless it is done with a `preconceived design to

28  inflict injury.'" *(Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d

23

1    865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098].) However, the issue to
2    which the *Clemmer* court spoke involved a question of the insured's
3    mental capacity. Subsequent decisions have made clear that the
4    "preconceived design to injure" standard is relevant only when the
5    insured's "mental capacity is an issue or the insured's intent or motive
6    might justify an otherwise wrongful act." *(Shell Oil Co.* v. *Winterthur*
7    *Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 740; see also *J. C. Penney*
8    *Casualty Ins. Co.* v. *M. K, supra,* 52 Cal.3d at pp. 1021-1025.) Citing
9    *J. C. Penney,* the *Shell Oil* court emphasized that "section
10   533 precludes *indemnification, whether or not the insured subjectively*
11   *intended harm,* if the insured seeks coverage for an intentional,
12   wrongful act that is inherently and necessarily harmful." *(Shell Oil Co.*
13   v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at pp. 740-741,
14   italics added.)

15   Above and beyond the evidentiary problems, Endurance has not offered any
16   evidence that the alleged Premium Financing Fraud was done for the "express
17   purpose" of harming Universal Bank (or any other party).  In fact, the showing
18   offered by Endurance would appear to contradict such a conclusion.

19   ## H.    RESTITUTION AND DISGORGEMENT

20   HBIA would provisionally agree with Endurance's legal position that, to the
21   extent that there is a final adjudication against HBIA holding that HBIA must pay
22   funds which are properly characterized as restitution, and not damages, to Universal
23   Bank, that portion of any judgment would likely not be covered under the Policies.

24   However, since those are not the only damages which Universal Bank has
25   sought, or which it might seek, this is an inappropriate request for summary
26   adjudication.  Rather, at such time as there is an actual verdict in the matter, which
27   can be examined and considered by the court, a determination can be made whether
28   such judgment is, or is not, covered.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)

12-cv-9277 JFW (Ex

1

DATED:  April 1, 2013

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A Professional Corporation


By:  /s/ - Steven Brower
STEVEN BROWER
Attorneys for Defendant
HAMILTON BREWART INSURANCE
AGENCY, LLC

L0922.0002 BN 13523812v1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT: 12-CV-9277 JFW (EX)**

12-cv-9277 JFW (Ex